[Cite as *Brown v. Brown*, 2017-Ohio-8175.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| ANTHONY E. BROWN | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff - Appellee | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Earle E. Wise, J. |
| -vs- | : | |
| | : | |
| DONA M. BROWN | : | Case No. 2017CA00017 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:    Appeal from the Stark County Court of Common Pleas, Domestic Relations Divison, Case No. 2015-DR-01191

JUDGMENT:         Affirmed

DATE OF JUDGMENT:     October 11, 2017

APPEARANCES:

For Plaintiff-Appellee        For Defendant-Appellant

WENDY J. ROCKENFELDER     KANI HARVEY HIGHTOWER
KEVIN R. L'HOMMEDIEU      Lynda Harvey Williams & Associates, L.L.C
5502 Market Avenue, North, Suite B  One Cascade Plaza, Suite 2100
Canton, Ohio 44721       Akron, Ohio 44308

*Baldwin, J.*

{¶1}  Defendant-appellant Dona M. Brown appeals from the December 28, 2016 Judgment Entry Decree of Divorce issued by the Stark County Court of Common Pleas, Domestic Relations Division.

STATEMENT OF THE FACTS AND CASE

{¶2}  Appellant Dona M. Brown and appellee Anthony E. Brown were married on September 11, 1998. Four children were born as issue of such marriage namely, C.B. (DOB 3/31/01), M.B. (DOB 1/27/03), S.B. (DOB 5/8/05) and T.B. (DOB 3/10/08).

{¶3}  On December 4, 2015, appellee filed a complaint for a divorce against appellant. Appellant, on January 6, 2016, filed an answer and counterclaim. Appellee filed a reply to the counterclaim on January 19, 2016 and a Motion for Shared Parenting on March 3, 2016. As memorialized in a Judgment Entry filed on April 5, 2016, the matter was set for trial on June 2, 2016.

{¶4}  Appellee filed an Amended Motion for Shared Parenting Plan on May 25, 2016.

{¶5}  On June 2, 2016, the parties reached an agreement as to parenting and signed a Shared Parenting Plan which was approved and adopted by the trial court.  The Magistrate, in an Order filed on June 6, 2016, continued the trial until June 24, 2016. Due to a conflict in the Magistrate's schedule, the matter, pursuant to a Magistrate's Order filed on June 7, 2016, was continued until August 22, 2016.

{¶6}  Appellant's counsel, on August 16, 2016, filed a Motion to Withdraw as Counsel and a Motion for a Continuance of Trial. Attached to the former motion was an August 8, 2016 e-mail from appellant to her counsel stating that she would be seeking

other counsel and to please stop working on her case. In her e-mail, she asked to be advised as to when she could come and pick up her file. The trial court granted the Motion to Withdraw via a Judgment Entry filed on August 16, 2016.  However, on the same day, the trial court denied the motion seeking a reasonable continuance of the trial so that appellant could obtain replacement counsel.

{¶7}   Just prior to the commencement of trial on August 22, 2016, the parties entered into a Separation Agreement and Amended Shared Parenting Plan. At the time, appellant was not represented by counsel. The only issues remaining to be determined at trial were spousal support, child support, and allocation of percentages for uninsured medical costs.  The following testimony was adduced at trial.

{¶8}   Ralph Dublikar, the managing partner of the firm in which appellee is a partner,    testified that appellant's earnings were tied to the earnings of the firm. He testified that, as a partner, appellee is responsible for paying his own Social Security, Medicare, State taxes and local taxes. According to Dublikar, the base monthly salary for all partners was $8,000.00 a month. However, because there have been times when there were insufficient funds to pay such amount, at times appellant has earned $4,000.00 a month. He further testified that "if a partner generates sufficient revenues um… in any given month, that number goes up to eleven thousand." Trial Transcript at 16.    Dublikar testified that if an attorney generates a certain amount of money in a year, he or she would be entitled to a bonus that is paid out the following year and is sometimes paid out all at once and other times incrementally. According to him, the firm matches voluntary contributions to appellee's 401(k).

**{¶9}** Dublikar testified that appellee earned a large bonus in the amount of $39,000.00 that was paid to him in 2013 which, he testified, was an anomaly. Appellee did not receive a bonus in 2014 and, in 2015, received a bonus in the amount of $8,290.00. In 2015, appellee received a total of $135,656.00 including draws, bonuses, and employer contributions to his 401(k) and HSA (health savings account) and for employer paid family health insurance. Dublikar testified that appellee would not be receiving a bonus in 2016. Dublikar further testified that the firm pays for appellee's health insurance but that the amount paid is treated as income to the partners. The firm also pays money into a HSA (health savings account). Dublikar testified that appellee's taxable income would be reduced because appellee's insurance expenses would not be as high since the children were going to be covered under appellant's insurance and that overall, appellee was going to have $10,000.00 less in income. He also testified that appellee's HSA contributions were going to be reduced and that appellee would receive $1,500.00 less in income on his K-1 because of such reduction.

**{¶10}** At the trial, appellee testified that appellant was 43 years old, was a physical therapist working in the Canton City Schools for the Stark Educational Service Center and that her gross wage was $67,842.00. Appellant has a Bachelors and a Master's Degree. He further testified that he had been paying temporary orders to appellant and also was paying expenses on behalf of the children including school supplies and other items in the amount of $170.00 at Wal-Mart and $216.75 at Famous Footwear to purchase shoes for the children. Appellee testified that in the future, without having to provide health insurance for the children, his taxable income would be approximately $124,000.00.

**{¶11}** When appellant was asked if she wanted to cross-examine appellee, she indicated to the trial court that she was having trouble getting herself together and requested a continuance. The Magistrate indicated that he was unable to grant a continuance. Appellant did not call any witnesses or present any exhibits. She did cross-examine appellee.

**{¶12}** The Magistrate, in a Decision filed on September 9, 2016, recommended that appellee pay appellant spousal support to appellant in the amount of $250.00 a month for 72 months and child support in the amount of   $1,500.00 a month with health insurance or $1,341.07 a month when private health insurance is provided. He based his decision on appellant earning a salary of $67,842.00 a year and appellee earning $132,000.00 a year. He found that appellee's income, not including bonuses, was $124,000.00 a year and, including average $8,000.00 bonuses, was $132,000.00 a year. The Magistrate also recommended that each party pay their own legal fees. Appellant filed objections to the Magistrate's Decision.

**{¶13}** An objection hearing was held on December 8, 2016. At the hearing, appellee presented exhibits to the trial court showing that, in September of 2016, he paid $505.87 in expenses for the children not including $71.00 for half of their cell phone bills and $510.00 a month for tuition and that, in October of 2016, he paid $794.81 a month in expenses of the children not including the cell phone and tuition. He also presented an exhibit showing that, in November of 2016, he paid a total of $969.26 not including the cell phone and tuition.

**{¶14}** Following the hearing held on December 8, 2016, the trial court, pursuant to a Judgment Entry filed on the same day, sustained the objections in part, ordering that

the order of spousal support was subject to the continuing jurisdiction of the trial court to modify the order in amount only based upon a change of circumstances. The trial court approved and adopted the remainder of the Magistrate's Decision. A Judgment Entry Decree of Divorce was filed on December 28, 2016.

{¶15} Appellant now raises the following assignment of error on appeal:

{¶16} I. THE TRIAL COURT COMMITTED PLAIN AND REVERSIBLE ERROR AS A MATTER OF LAW AND VIOLATED WIFE'S CONSTITUTIONAL DUE PROCESS RIGHTS WHEN IT FAILED TO GRANT THE WIFE'S REQUEST FOR A CONTINUANCE SO SHE COULD OBTAIN LEGAL REPRESENTATION AND REQUIRED HER TO PROCEED PRO SE.

{¶17} II. THE TRIAL COURT COMMITTED PLAIN AND REVERSIBLE ERROR AS IT RELATES TO THE COMPUTATION OF WIFE'S SPOUSAL SUPPORT, AS THE DETERMINATION OF THE AMOUNT OF SPOUSAL SUPPORT FOR WIFE WAS AN ABUSE OF DISCRETION, AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, AND CONTRARY TO LAW.

{¶18} III. THE TRIAL COURT COMMITTED PLAIN AND REVERSIBLE ERROR AS IT RELATES TO THE COMPUTATION OF CHILD SUPPORT, AS THE DETERMINATION OF THE AMOUNT OF CHILD SUPPORT HUSBAND WAS TO PAY WIFE WAS AN ABUSE OF DISCRETION, AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, AND CONTRARY TO LAW.

{¶19} IV. THE TRIAL COURT COMMITTED PLAIN AND REVERSIBLE ERROR AS A MATTER OF LAW WHEN IT FAILED TO CONSIDER THE WIFE'S REQUEST FOR ATTORNEYS FEES.

I

**{¶20}** Appellant, in her first assignment of error, argues that the trial court erred when it denied her request for a continuance of the trial. We disagree.

**{¶21}** The decision to grant or deny a continuance is entrusted to the broad, sound discretion of the trial court and will not be disturbed absent an abuse of discretion. *Lemon v. Lemon,* 5th Dist. Stark No. 2010CA00319, 2011–Ohio–1878, citing *State v. Unger*, 67 Ohio St.2d 65, 423 N.E.2d 1078 (1981). In determining whether a trial court abused its discretion in denying a motion for a continuance, an appellate court should consider the following factors: (1) the length of the delay requested; (2) whether other continuances have been requested and received; (3) the inconvenience to witnesses, opposing counsel, and the court; (4) whether there is a legitimate reason for the continuance; (5) whether the defendant contributed to the circumstances giving rise to the need for the continuance, and other relevant factors, depending on the unique facts of each case. *Unger,* supra, at 67–68, 423 N.E.2d 1078. The reviewing court must also weigh the potential prejudice to the movant against the trial court's right to control its own docket. *In re Barnick,* 8th Dist. No. 88334, 2007–Ohio–1720, ¶ 10, quoting *Unger.*

**{¶22}** In the case sub judice, the trial was originally scheduled for June 2, 2016 but, as memorialized in a Magistrate's Order filed on June 6, 2016, was rescheduled to June 24, 2016. However, in an Order filed on June 7, 2016, the Magistrate continued the trial until August 22, 2016 due to a conflict with his schedule.

**{¶23}** On August 8, 2016, two weeks before trial, appellant sent an e-mail to her counsel indicating that she wanted him to stop working on her case and that she would be seeking other counsel. Appellant's counsel, on August 16, 2016, filed a Motion to

Withdraw and a Motion for a Continuance asking that appellant be given a reasonable opportunity to obtain replacement counsel to represent her. While the trial court granted the Motion to Withdraw, it overruled the request for a continuance.

**{¶24}** Upon review of the record, we find that the trial court did not abuse its discretion in denying appellant's request for a continuance because the trial court's decision was not arbitrary, unconscionable or unreasonable. Appellant contributed to the circumstances giving rise to the need for the continuance as she chose to discharge counsel two weeks before trial. In addition, the trial had previously been continued, and the matter had been pending on the court's docket since December of 2015. Moreover, when appellant appeared on August 22, 2016 for trial, she did not request a continuance until it was time for her to cross-examine appellee.

**{¶25}** Appellant's first assignment of error is, therefore, overruled.

II

**{¶26}** Appellant, in her second assignment of error, contends that the trial court erred in awarding her only $250.00 a month in spousal support for a period of 72 months.

**{¶27}** Our standard of review of decisions as to spousal support is an abuse of discretion. *Snyder v. Synder*, 5th Dist. Stark No. 2008CA00219, 2009–Ohio–5292, ¶ 28. Abuse of discretion implies the trial court's attitude is unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

**{¶28}** R.C. 3105.18 governs spousal support. Subsection (C) states the following:

**{¶29}** (C)(1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration

of spousal support, which is payable either in gross or in installments, the court shall

consider all of the following factors:

{¶30} (a)  The income of the parties, from all sources, including, but not limited to,

income derived from property divided, disbursed, or distributed under section 3105.171

of the Revised Code;

{¶31} (b)  The relative earning abilities of the parties;

{¶32} (c)  The ages and the physical, mental, and emotional conditions of the

parties;

{¶33} (d)  The retirement benefits of the parties;

{¶34} (e)  The duration of the marriage;

{¶35} (f)  The extent to which it would be inappropriate for a party, because that

party will be custodian of a minor child of the marriage, to seek employment outside the

home;

{¶36} (g)  The standard of living of the parties established during the marriage;

{¶37} (h)  The relative extent of education of the parties;

{¶38} (i)  The relative assets and liabilities of the parties, including but not limited

to any court-ordered payments by the parties;

{¶39} (j) The contribution of each party to the education, training, or earning ability

of the other party, including, but not limited to, any party's contribution to the acquisition

of a professional degree of the other party;

{¶40} (k) The time and expense necessary for the spouse who is seeking spousal

support to acquire education, training, or job experience so that the spouse will be

qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;

**{¶41}** (l)  The tax consequences, for each party, of an award of spousal support;

**{¶42}** (m)  The lost income production capacity of either party that resulted from that party's marital responsibilities;

**{¶43}** (n)  Any other factor that the court expressly finds to be relevant and equitable.

**{¶44}** The Magistrate, in his Decision, addressed all of the factors set forth above and noted that there was evidence with respect to all of such factors except for  (j) and (m). The Magistrate found that appellant earned $67,842.00 a year and appellee $132,000.00 a year, that both were in their forties and in good health, and that both had retirement benefits that had been divided pursuant to the Separation Agreement. The Magistrate further found that the parties had been married almost 18 years and had significant debt that both would be burdened by.  As noted by appellee, the trial court's spousal and child support awards results in appellant receiving over 50% of the net disposable income.  Finally, the trial court retained jurisdiction over spousal support.

**{¶45}** Based on the foregoing, we find that the trial court did not abuse its discretion in its spousal support award.

**{¶46}** Appellant's second assignment of error is, therefore, overruled.

III

**{¶47}** Appellant, in her third assignment of error, argues that the trial court erred in deviating downward from the basic child support computation rather than upward.

**{¶48}** In reviewing matters concerning a child support deviation, the decision of the trial court should not be overturned absent an abuse of discretion. *Booth v. Booth,* 44 Ohio St.3d 142, 541 N.E.2d 1028 (1989). In order to find an abuse of discretion, we must find that the court's action is unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. *Blakemore,* supra.

**{¶49}** A trial court may order child support that deviates from the amount of child support that would otherwise result from the use of the basic child support schedule and the applicable worksheet if the amount calculated would be unjust or inappropriate and would not be in the best interest of the child. *Marker v. Grimm,* 65 Ohio St.3d 139, 601 N.E.2d 496 (1992). When determining whether a departure from the guideline child support amount is warranted, the trial court may consider whether a parent incurs extraordinary costs associated with visitation. *Hurst v. Hurst,* 12th Dist. Warren No. CA2013–10–100, 2014–Ohio–4762, citing R.C. 3119.23(D); *Kemp v. Kemp,* 5th Dist. Stark No.2009CA00035, 2009–Ohio–6089. The court also may consider "[s]ignificant in-kind contributions from a parent, including, but not limited to, direct payment for lessons, sports equipment, schooling, or clothing." See R.C. 3119.23(J).

**{¶50}** R.C. 3119.22 provides that if the court deviates from the child-support guidelines, it shall enter in the journal the amount of the child support calculated pursuant to the basic child-support schedule and the applicable worksheet, plus its determination that the amount would be unjust or inappropriate and would not be in the best interest of the child, and findings of fact supporting its determination. *Tennant v. Martin–Auer,* 188 Ohio App.3d 768, 2010–Ohio–3489, 936 N.E.2d 1013 (5th Dist. Licking). However, the

statute provides no "set method" to employ to formulate a deviation. *Lopez–Ruiz v. Botta,* 10th Dist. Franklin No. 11AP–577, 2012–Ohio–718.

**{¶51}** In the case sub judice, the child support guideline worksheet supported an order of child support requiring appellee to pay appellant $1,940.70 a month plus processing with private health insurance and $1,781.71 per month plus processing and $323.67 per month cash medical when private health insurance was not provided. At the trial, appellee asked the trial court to deviate downward to a figure of $1,500.00 a month in child support because of the Shared Parenting Plan and the additional expenses that appellee pays for the children outside of the temporary order of child support.

**{¶52}** Under the Shared Parenting Plan, appellee spends more time with the children than under the standard visitation schedule. Moreover, under the Plan, appellee agreed to pay half of the children's' tuition for private elementary and middle school. He testified that he believed that the total was $500.00 a month. Appellee further testified that he agreed to pay 50% of the children's extracurricular activities costs and that he had been paying expenses on behalf of the children including $170.00 at Wal-Mart for school supplies and other items, $216.75 in August of 2016 at Famous Footwear for shoes, $35.00 for haircuts and $30.00 for a boater's license for the oldest son. Appellee testified that when the children had expenses, whether they were with him or not, he paid for the same.

**{¶53}** The Magistrate, in his Decision, found that, based on the foregoing, the guideline child support amount would be unfair, unjust and not in the best interest of the children and that a downward deviation in the amount of child support was warranted.

The trial court, in its December 8, 2016 Judgment Entry, approved and adopted such determination.

{¶54} We cannot say, based upon the record, that the trial court's decision was unreasonable, arbitrary, or unconscionable. While appellant, at the objection hearing, argued, in part, that there should be an upward deviation in child support based on the fact that she would by paying for all of the private high school tuition for the children, appellee's counsel indicated to the trial court that appellee wanted his children to attend the local public high school and that he conceded that, if appellant wanted the children to go to private parochial school, appellant could pay for the tuition. Moreover, at the objection hearing, appellee, as is stated above in the facts, provided the trial court with documentation was to other significant expenses that he had incurred for the benefit of the children.

{¶55} Appellant's third assignment of error is, therefore, overruled.

IV

{¶56} Appellant, in her fourth assignment of error, maintains that the trial court erred in failing to consider her request for attorney's fees.

{¶57} R.C. 3105.73(A) states the following:

In an action for divorce, dissolution, legal separation, or annulment of marriage or an appeal of that action, a court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' marital assets and income, any award of

temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate.

**{¶58}** As explained by this Court in *Dotts v. Schaefer,* 5th Dist. Tuscarawas No. 2014 AP 06 0022, 2015–Ohio–782, ¶ 17:

> The resolution of a request for attorney fees is vested in the sound discretion of the trial court and will not be overturned upon review absent a showing of an abuse of discretion. *Bagnola v. Bagnola,* 5th Dist. Stark No. 2004CA00151, 2004–Ohio–7286 [2004 WL 3090245], ¶ 36. While the trial court has discretion in determining the amount of attorney fees, the court must base its decision on evidence showing the reasonableness of the time spent on the matter and the hourly rate. *Id.* Where the amount of an attorney's time and work is evident to the trier of fact, an award of attorney fees, even in the absence of specific evidence to support the amount, is not an abuse of discretion. *Hawk v. Hawk,* 5th Dist. Tuscarawas No. 2002AP040024, 2002–Ohio–4384 [2002 WL 1969845], ¶ 28.

**{¶59}** At the trial before the Magistrate, appellant never specifically requested attorney's fees. Rather, appellant asked that her new higher full-time salary not be included into a consideration by the trial court but that her previous, part-time salary be considered based on her substantial attorney's fees. She did not present any evidence with respect to the amount of or reasonableness of her attorney's fees. As is stated above, the Magistrate, in his Decision, recommended that each party pay their own legal fees. The trial court, in its December 8, 2016 Judgment Entry, approved and affirmed

such decision with one limited exception, stating that it had considered the factors set forth in R.C. 3105.73(A), cited above. We find no abuse of discretion.

**{¶60}** Appellant's fourth assignment of error is, therefore, overruled.

**{¶61}** Accordingly, the judgment of the Stark County Court of Common Pleas, Domestic Relations Division, is affirmed.

By: Baldwin, J.

Gwin, P.J. and

Earle Wise, J. concur.